**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND DIVISION**

| | |
|---|---|
| **BARBARA HITCHCOCK MILBURN,** | **CIVIL ACTION NO. 0:26-11-KKC** |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **FRANK BISIGNANO,** **COMMISSIONER OF SSA,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

Plaintiff Barbara Hitchcock Milburn brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for Supplemental Security Income benefits. The Court, having reviewed the record, will affirm the Commissioner's decision.

This Court's review of the decision by the Administrative Law Judge ("ALJ") is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir.2009). The Court cannot reverse the ALJ "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter, Commissioner of Social Security*, 246 F.3d 762, 772 (6th Cir.2001). If the ALJ's decision is supported by substantial evidence, it must be affirmed, even if this Court would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir.1981).

In denying Milburn's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e). *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Milburn, who was 46 years old at the time she filed her application for benefits (Administrative Record ("AR") 26), has not engaged in substantial gainful activity since September 8, 2022, the application date. (AR 19.)

At step two, the ALJ determined that Milburn suffers from the following severe impairments: peripheral artery disease/peripheral vascular disease, hypertension, obesity, degenerative disc disease of the cervical spine, diabetes mellitus with neuropathy, and status/post NSTEMI (a type of heart attack caused by partial, rather than total, blockage in a coronary artery) multivessel coronary artery disease. (AR 19.)

At step three, the ALJ found that Milburn does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 21.)

Before proceeding to step four, the ALJ determined that Milburn has the residual functional capacity (RFC) to perform "light work" as defined in 20 C.F.R. 416.967(b) with certain exceptions. (AR 22.) Light work is defined as involving:

> Lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

As to the exceptions to Milburn's ability to perform light work, the ALJ determined that Milburn could never climb ladders, ropes or scaffolds and could only occasionally climb ramps and stairs, crouch, kneel, crawl, and balance. (AR 22.) The ALJ also determined that Milburn must avoid moderate exposure to extreme cold and extreme hot, humidity, and vibration and that she must avoid all exposure to hazards. (AR 22.)

At step four, the ALJ determined that Milburn is unable to perform any past relevant work. (AR 26.)

At step five, the ALJ determined that, considering the RFC described above and Milburn's age, education, and work experience, there are jobs that exist in significant numbers in the national economy that she can perform and, thus, she is not disabled. (AR 26.)

Milburn argues that the RFC does not impose all the limitations that it should on her ability to work. She argues that the ALJ should have determined that she can never climb; can walk and stand only as required for a "sedentary" job; can handle and finger only occasionally; and is more restricted in her ability to push, pull, lift, carry, operate hand and foot controls, and drive that the RFC reflects. (R. 12 Bf. 8, 10.) "It is the plaintiff's burden to establish that greater functional limitations arising from their impairments are necessary." *Hall v. Comm'r of Soc. Sec.*, No. 6:24-CV-63-KKC, 2025 WL 1409494, at *4 (E.D. Ky. May 15, 2025); *see also Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019); *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008).

Milburn points to various medical records that may evidence certain medical conditions, but "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Dyson*, 786 F. App'x at 589 (quoting *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014)). The ALJ considered Milburn's diagnosed conditions and set some

restrictions on her ability to work, including finding that she can do only "light work" with exceptions even to that. Milburn points to no evidence that her medical conditions restrict her ability to do work functions more than that.

Milburn argues that the ALJ should have determined from the neurological report of Dr. Joseph Ryan Owens that she cannot stand for six hours at a time, cannot handle or finger constantly, cannot use hand or foot controls, push or pull without limitation, or drive. The ALJ noted Dr. Owens' findings that Milburn had "decreased sensation to temperatures and pinprick in a stocking glove distribution to the knee level bilaterally and elbow bilaterally" and that she had "no vibratory sensation in both great toes and decreased vibratory sensation in both hands." (AR 23.) Milburn argues that the ALJ had a "fundamental misunderstanding of the nature and significance" of Dr Owens' neurological findings and their "functional implications." She argues that Dr. Owens' findings were "logically connected to more restrictions in the RFC." (R. 12 Br. 9.) To find that connection, however, the ALJ would need to rely on medical evidence. Milburn points to no such evidence in the record.

Milburn argues that the ALJ omitted "critical portions" of Dr. Owens' report. However, the portions she cites contain only a description of Milburn's own subjective complaints. (AR 670.) This is not medical evidence requiring greater limitations or restrictions on Milburn's ability to work.

Milburn argues that the ALJ failed to consider Dr. Sajeel Khan's determination that she has "manual maldexterity" and "disequilibrium." (AR 1906.) Again, however, Dr. Khan indicated only that Milburn reported these symptoms. (AR 1903-04.) As Milburn points out, Dr. Khan concluded that these symptoms were consistent with his diagnosis of cervical stenosis and cervical myelopathy (AR 1906), but his report contains no objective findings of manual

4

maldexterity or disequilibrium. The ALJ found "minimal complaints of dizziness and poor balance" in the medical record. (R. 25.) Milburn does not point to anything other than Dr. Khan's recitation of her reported symptoms.

As to Milburn's ability to use of her hands and fingers, the ALJ found "no finding of decreased range of motion of the hands." (R. 25.) Milburn points to no such findings in the record. Moreover, the ALJ pointed out that Milburn reported in a questionnaire that she can text, prepare simple meals, shop in stores and online, and drive. Milburn argues that the ALJ should have concluded from Dr. Khan's report that she can walk and stand only as required for a sedentary job. Nothing in Dr. Khan's report indicates that Milburn is any more restricted in her ability to work than the RFC sets out.

Milburn argues that the ALJ should not have considered her answers to the questions on the questionnaire because it predates her cataract and heart surgeries. She argues that she now has lost total control of her dominant hand. Milburn also argues that the ALJ should have determined she has vision restrictions. She cites no medical evidence to support that she has lost control of her hand or that she has visual impairments that have not been corrected. She cites only her own statements. (DE 12 Bf. 11-12; AR 231, 235.) A claimant's statements about her symptoms cannot alone establish disability. 20 C.F.R. § 404.1529(a); *Bailey v. Comm'r of Soc. Sec.*, 623 F. Supp. 2d 889, 909 (W.D. Mich. 2009).

Milburn argues that the ALJ impermissibly found the opinions of the state agency medical consultants to be persuasive. Milburn argues that the ALJ could not rely on these opinions because they were rendered before her cataract and heart surgeries. But this does not mean the ALJ cannot rely on those opinions. The ALJ herself considered evidence regarding Milburn's cataract and heart surgeries. Having considered that evidence, the ALJ did not err in

finding the consultants' opinions remained persuasive. *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 248 (6th Cir. 2016).

Milburn argues that the state agency medical consultants found she had limitations in pushing and pulling with the upper extremities that were not reflected in the RFC. The ALJ consultants found she was "limited beyond lift and/or carry." (AR 73, 81.)  The ALJ did place some restrictions on Milburn's ability to push and pull. The ALJ concluded she could do only "light work," which limits pushing and pulling to "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). The RFC also finds that Milburn cannot climb ladders, ropes, or scaffolds.  Nothing in the state agency medical consultants' opinions requires greater restrictions.

In addition to complaints about the RFC, Milburn also argues that the ALJ erred in finding that she can perform a significant number of jobs that exist in the national economy. She argues that the ALJ incorrectly found that she can perform the job of usher. She asserts that this job requires frequent climbing and descending stairs, which is incompatible with the RFC set by the ALJ. In making the finding that Milburn can perform a significant number of existing jobs, however, the ALJ relied on a vocational expert. Milburn cites no evidence that she cannot perform the job of usher; she merely argues that this must be the case. Milburn also argues that the ALJ erred in determining the number of jobs that exist that she could perform. Milburn presents alternative numbers from a vocational software called SkillTran. These numbers were not before the ALJ. Accordingly, the Court cannot find that the ALJ erred by not considering them.

For all these reasons, the Court hereby ORDERS Plaintiff Barbara Hitchcock Milburn's request that the Court vacate the ALJ's decision and remand this matter to the agency for further proceedings (R. 12) is DENIED. The Court will enter judgment affirming the Commissioner's decision.

This 23rd day of March, 2026.

Signed By:

**_Karen K. Caldwell_**

**United States District Judge**